# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

STATE OF WASHINGTON,　　　　　)
　　　　　　　　　　　　　　　　)　　No. 72263-8-I
　　　　　　　　Appellant,　　　)
　　　　　　　　　　　　　　　　)　　DIVISION ONE
　　　　v.　　　　　　　　　　　)
　　　　　　　　　　　　　　　　)　　PUBLISHED OPINION
SAYIDEN HUSSEIN MOHAMED,　　　)
　　　　　　　　　　　　　　　　)
　　　　　　　　Respondent.　　　)　　FILED: August 17, 2015

TRICKEY, J. — A jury convicted Sayiden Mohamed of two counts of third degree assault. Mohamed thereafter moved for a new trial based on the admission of his prior convictions under Evidence Rule (ER) 806. The trial court granted the motion, concluding that the admission was contrary to a Court of Appeals, Division Two decision, State v. Lucas, 167 Wn. App. 100, 271 P.3d 394 (2012). The State appeals the trial court's ruling.

The defense expert witness testified about Mohamed's out-of-court statements. The State contends that Mohamed's statements were offered to prove the truth of the matter asserted, thereby triggering the application of ER 806. But as in Lucas, where we held that out-of-court statements on which experts base their opinions are not hearsay, the statements here were not substantive evidence but rather offered for the limited purpose of explaining the basis of the expert's opinion. Thus, consistent with the holding in Lucas, we affirm.

## FACTS

On April 4, 2014, Everett Police Officers Jeff Klages and Michael Keith were dispatched to Mohamed's residence to respond to several 911 hang-up telephone calls originating from the residence. The officers made contact with Mohamed and spoke with him for about 10 to 15 minutes. Mohamed appeared to be drinking alcohol that evening;

the officers noted an odor of alcohol on his breath and person. The officers released Mohamed when they were finished speaking with him. Mohamed returned inside his residence.

Shortly thereafter, the officers learned that Mohamed had an outstanding warrant for his arrest. When Mohamed emerged outside his residence again, Officer Keith advised him that he was under arrest.

Mohamed immediately became hostile and belligerent. He yelled at the officers, threatened them, and used obscene language. He resisted their efforts to search him and place him in the patrol vehicle. The officers took ahold of Mohamed and began to forcibly move him to an area nearby where they could secure him to the ground. Mohamed spat at both officers' faces. Mohamed turned back at Officer Klages and spat at him once again. He continued to yell obscenities at the officers and threatened that he would spit at them again.

Additional officers responded to the scene in response to Officer Klages's call for assistance. One of the officers brought a "spit mask" to place over Mohamed's head to prevent him from spitting at people.[1] The officers carried Mohamed to a police vehicle because he would not cooperate. Mohamed continued to spit at the officers. The officers transported him to jail.

The State charged Mohamed with two counts of third degree assault for his acts of spitting at the officers.

At trial, Mohamed's only witness was expert Dr. Robert Julien, a pharmacologist. He testified that virtually every person with a blood alcohol level above 0.30 percent will

---

[1] Report of Proceedings (RP) (6/30/2014) at 89, 92.

be in a state of alcohol-induced dementia or "blackout."[2] Dr. Julien testified that when a person is in an alcohol-induced dementia, he has an inability to form memories, and cannot meet the legal definition of intent.

To prepare for trial, Dr. Julien reviewed narratives from the police officers who described the incident. He also interviewed Mohamed by telephone. During the interview, Mohamed told Dr. Julien that he had begun consuming alcohol at 3:00 p.m. on the day in question. According to Mohamed, he had ingested five 24-ounce cans of beer and most of a pint of vodka. Mohamed also reported to Dr. Julien that he had no memory of the incident and that his memory had recovered when he found himself in jail.

Dr. Julien estimated Mohamed's blood alcohol level to be 0.40 percent, which is "enough to guarantee blackout."[3] Dr. Julien opined that "[b]ased upon the officers' description of extreme intoxication, which is consistent with blackout, [Mohamed's] self-report of memory, [Mohamed's] estimate of what he ingested, is all consistent with . . . alcohol-induced blackout."[4] Dr. Julien concluded that Mohamed did not have the ability to reason at the time the officers made contact with him, and did not have the ability to form intent at the time.

On direct examination, Dr. Julien testified that his opinion was based on Mohamed's self-report of his memory and the amount of alcohol that he had consumed that night. Dr. Julien acknowledged that if Mohamed's self-report were inaccurate, it would alter his final conclusions. On cross-examination, the State asked Dr. Julien whether Mohamed had an incentive to provide incorrect facts to him. Dr. Julien

---

[2] RP (7/1/2014) at 46-48.
[3] RP (7/1/2014) at 55.
[4] RP (7/1/2014) at 57.

3

responded:

> I cannot judge and do not attempt to judge the truth or fallacy of [Mohamed's] statements to me. Even the best of the psychologists are really unable to do that. I have to leave it to the jury, to the trier of fact, to determine the accuracy, or lack thereof, of this individual.[5]

Mohamed's criminal history included convictions for second degree burglary, second degree theft, theft of a motor vehicle, and several convictions for third degree theft. At the outset of trial, the parties agreed that if Mohamed testified, these prior convictions for crimes of dishonesty would be admissible for impeachment. See ER 609(a)(2). Mohamed did not testify at trial.

After the State rested, but before Dr. Julien testified, the State asked permission to cross-examine Dr. Julien, under ER 806, about Mohamed's credibility through the use of Mohamed's prior convictions. Defense counsel objected to the State's motion. The trial court allowed cross-examination on the prior convictions.

The trial court permitted the State to ask Dr. Julien if he was aware that Mohamed had prior convictions, but it was not allowed to specify the dates or offenses. The State could then ask how the convictions affected Dr. Julien's opinions.

The trial court suggested the following limiting instruction be provided to the jury before Dr. Julien's testimony:

> Statements made by the defendant to Dr. Julien are being offered only for the limited purpose of seeking to help explain Dr. Julien's opinions and are to be considered by you only for that limited purpose. Any information regarding prior convictions of the defendant is being offered only for the limited purpose of seeking to help challenge the defendant's credibility and Dr. Julien's opinions and are to be considered by you only for that limited purpose.[6]

---

[5] RP (7/1/2014) at 69.
[6] RP (7/1/2014) at 30.

Counsel on both sides declined the instruction.

During the State's cross-examination of Dr. Julien, the State posed questions in accord with the trial court's ruling:

> Q. So if you knew that the defendant had been convicted of multiple crimes of dishonesty, like, two felony theft convictions and multiple misdemeanor theft convictions, and that he had been dishonest in the past, would you take that into consideration when you come before a jury and stake your reputation by giving the conclusion that you just did?
>
> A. Not in my report. That is not my responsibility to do. It's to report the results of my interview with him. And it's up to others to make the determination of his reliability or lack thereof.[7]

At the conclusion of trial, the trial court provided the following instruction:

> You may consider information that the defendant has been convicted of a crime only in deciding what weight or credibility to give to the defendant's statements, and for no other purpose.[8]

The jury was also instructed on Mohamed's defense of voluntary intoxication.

While the jury deliberated, defense counsel informed the trial court that she planned to move for a mistrial based on a Division Two decision she had just discovered, State v. Lucas, 167 Wn. App. 100, 271 P.3d 394 (2012). Defense counsel argued that, under Lucas, Mohamed's prior convictions were not admissible under ER 806.

The jury returned a verdict of guilty on the charges. Defense counsel then moved for a mistrial or, in the alternative, a new trial based on Lucas. The trial court concluded that, in light of Lucas, it had made an error of law in permitting the State to cross-examine Dr. Julien with Mohamed's prior criminal convictions. The court granted a new trial.

The State appeals.

---

[7] RP (7/1/2014) at 69-70.
[8] Clerk's Papers (CP) at 94.

ANALYSIS

The State contends the trial court erred in granting Mohamed's motion for new trial. This is so, it maintains, because Mohamed's statements, to which the expert testified, were offered for the truth of the matter asserted. Therefore, under ER 806, the State argues, impeachment through Mohamed's prior convictions was proper. We disagree.

"A trial court's decision granting a new trial will not be disturbed on appeal unless it is predicated on erroneous interpretations of the law or constitutes an abuse of discretion." State v. Jackman, 113 Wn.2d 772, 777, 783 P.2d 580 (1989). Where, as here, a motion for new trial is based on legal error, we review the trial court's order granting a new trial de novo. Edwards v. Le Duc, 157 Wn. App. 455, 459, 238 P.3d 1187 (2010).

The resolution of this case turns on the applicability of ER 806. This rule provides:

> When a hearsay statement, or a statement defined in rule 801(d)(2)(iii), (iv), or (v), has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time, inconsistent with the declarant's hearsay statement, is not subject to any requirement that the declarant may have been afforded an opportunity to deny or explain. If the party against whom a hearsay statement has been admitted calls the declarant as a witness, the party is entitled to examine the declarant on the statement as if under cross examination.

ER 806.

"Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, *offered in evidence to prove the truth of the matter asserted*." ER 801(c) (emphasis added).

"ER 806 authorizes impeachment of a declarant only when the declarant's statement has been offered to prove the truth of the matter asserted. If the statement is

offered for some other nonhearsay purpose, ER 806 does not apply." State v. Fish, 99 Wn. App. 86, 95, 992 P.2d 505 (1999).

ER 703[9] allows an expert to base his or her opinion on factors or data that are not otherwise admissible so long as they are reasonably relied upon by experts in the particular field. In re Detention of Marshall, 156 Wn.2d 150, 161, 125 P.3d 111 (2005). "Thus, the rule allows expert opinion testimony based on hearsay data that would otherwise be inadmissible in evidence." Marshall, 156 Wn.2d at 162. ER 705 provides:

> The expert may testify in terms of opinion or inference and give reasons therefor without prior disclosure of the underlying facts or data, unless the judge requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross examination.

Read together, these evidence rules allow expert witnesses to testify to the reasons for their opinions, even when the information relied upon is inadmissible hearsay.

The issue on appeal is not one of first impression. Division Two addressed this issue in Lucas, the decision on which the trial court relied in granting a new trial. There, the defendant's expert psychiatrist testified on the defendant's diminished capacity defense. Lucas, 167 Wn. App. at 105. The defense expert interviewed and examined the defendant before trial. Lucas, 167 Wn. App. at 105. The defendant told the expert that on the day of the crime, he consumed a large amount of alcohol and could remember only waking up in jail. Lucas, 167 Wn. App. at 105. The expert testified that the defendant was incapable of forming the requisite intent to commit the charged crime. Lucas, 167

---

[9] ER 703 provides:
> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

Wn. App. at 105. The State moved to cross-examine the expert with evidence of the defendant's prior conviction. Lucas, 167 Wn. App. at 105-06. The trial court allowed the prior conviction to come in under ER 806. Lucas, 167 Wn. App. at 105-06.

Division Two held that the trial court's admission of the defendant's prior conviction under ER 806 was reversible error. Lucas, 167 Wn. App. at 111-12. The court reasoned that the defendant's out-of-court statements, as admitted in evidence through the expert's testimony, were not hearsay under ER 801(c); rather, pursuant to ER 703 and 705, they were out-of-court statements offered "'for the limited purpose of explaining the expert's opinion.'" Lucas, 167 Wn. App. at 109 (quoting 5D KARL B. TEGLAND, WASHINGTON PRACTICE: COURTROOM HANDBOOK ON WASHINGTON EVIDENCE author's cmts. at 387, 400 (2011-12 ed.)). The court held that "out-of-court statements offered at trial as the basis of an expert's opinion are not hearsay and, thus, do not expose the declarant to impeachment under ER 806." Lucas, 167 Wn. App. at 109-110.

The court observed that the State tested the reliability of the expert's opinion through its extensive cross-examination of the expert and was able to cast doubt on the credibility of the defendant's out-of-court statements, "thus rendering any reference to [the defendant's] prior conviction unnecessary." Lucas, 167 Wn. App. at 110. The court went on to hold that the error of admitting evidence of the defendant's prior conviction was not harmless. Lucas, 167 Wn. App. at 111-12. The court reasoned in part that, in general, the erroneous admission of a defendant's prior criminal convictions is harmless where the defendant had other prior convictions that were properly admissible. Lucas, 167 Wn. App. at 112.

The relevant facts in this case are analogous to those in Lucas. Dr. Julien testified to Mohamed's out-of-court statements to explain to the jury the basis for his opinion that Mohamed lacked the requisite intent. The State thereafter tested the reliability of Dr. Julien's expert testimony through a lengthy cross-examination, calling into question both Dr. Julien's and Mohamed's credibility. Thus, adhering to the holding of Lucas, we conclude that the out-of-court statements here were not offered to prove the matter asserted but were offered for a separate nonhearsay purpose of explaining the basis for Dr. Julien's opinion. Furthermore, as in Lucas, the error was not harmless: no other prior convictions were properly admissible.

The State points out that the decision in Lucas did not mention whether a limiting instruction was requested or provided. The State asks us to distinguish Lucas from the case at bar, arguing that the trial court here should have provided a limiting instruction to the jury. We decline to do so.

Washington case law has noted the necessity of providing limiting instructions in the context of ER 703 and 705 testimony. See, e.g., Marshall, 156 Wn.2d at 163 (The trial court has discretion under ER 705 "to allow the expert to relate hearsay or otherwise inadmissible evidence to the trier of fact to explain the reasons for his or her expert opinion, subject to appropriate limiting instructions."); In re Detention of Coe, 175 Wn.2d 482, 513-14, 286 P.3d 29 (2012) ("The trial court need only give an appropriate limiting instruction explaining that the jury is not to consider this revealed information as substantive evidence."). But the trial court's failure to provide a limiting instruction does not constitute grounds to reverse the trial court's decision to grant a new trial where, as here, no instruction was requested. See State v. Dow, 162 Wn. App. 324, 333, 253 P.3d

9

476 (2011) (party that fails to ask for a limiting instruction waives any argument on appeal that the trial court should have given the instruction); see also State v. Athan, 160 Wn.2d 354, 383, 158 P.3d 27 (2007) (although a limiting instruction on the use of admitted hearsay evidence is generally required, court's failure to provide the instruction is not error where no instruction was requested). Indeed, both counsel rejected the trial court's proposed limiting instruction as to Mohamed's statements to Dr. Julien. And contrary to the State's contention, the absence of a limiting instruction here did not automatically make Mohamed's out-court-statements hearsay.

Accordingly, as in Lucas, ER 806 does not apply because Mohamed's statements to Dr. Julien were not offered for the truth of the matter asserted. Thus, evidence of Mohamed's prior convictions were not properly admitted. The error was not harmless, and the trial court properly granted a new trial.

Affirmed.

Trickey, J

WE CONCUR:

Speck, C.J.

10