

**FILE**
IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE JUL 2 1 2016

CHIEF JUSTICE

This opinion was filed for record
at 8:00am on Jul 21, 2016

Supreme Court Clerk

# IN THE SUPREME COURT OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 92261-6 |
|  | ) |  |
| Petitioner, | ) |  |
|  | ) | En Banc |
| v. | ) |  |
|  | ) |  |
| SAYIDEN HUSSEIN MOHAMED, | ) | Filed _____ JUL 2 1 2016 |
|  | ) |  |
| Respondent. | ) |  |
|  | ) |  |

YU, J.—This case requires us to determine whether it is permissible to impeach a hearsay declarant with his or her prior convictions under certain circumstances. ER 806 allows for impeachment of a hearsay declarant as if the declarant were a testifying witness. In this case, the defendant did not testify and his own out-of-court statements were admitted into evidence through his expert witness' testimony. Defense counsel expressly declined a limiting instruction offered by the trial court regarding the purpose of the defendant's statements. The State then cross-examined the expert witness with the defendant's previously admitted prior convictions pursuant to ER 806.

The defendant contends that his out-of-court statements were not admitted for the truth of the matter asserted, barring impeachment pursuant to ER 806. Because defense counsel declined an instruction that would have limited the evidence to its proper purpose, we hold that the statements were also offered for their truth and that impeachment of the defendant's credibility was therefore permissible pursuant to ER 806. Consequently, we reverse the Court of Appeals and reinstate the convictions.

FACTUAL AND PROCEDURAL HISTORY

The underlying facts of defendant Sayiden Mohamed's arrest are straightforward and undisputed. Two police officers were dispatched to the defendant's residence to follow up on several 911 hang-up calls that had originated from the house. Upon speaking with him, the officers observed that the defendant was intoxicated but determined that no further action was needed. Shortly after ending the initial contact, the officers received information that there was an outstanding warrant for the defendant's arrest. When the officers returned to carry out the arrest, the defendant became hostile and belligerent and resisted the officers' attempts to place him in the patrol car. While the officers were in the process of forcibly subduing him until backup arrived, the defendant spit in both of the officers' faces. He continued to spit at the officers even after a spit mask was placed over his head. Once the defendant was restrained, the officers were able to

place him in the patrol car and take him to jail. The defendant was charged with two counts of third degree assault for spitting on the arresting officers.

During pretrial motions, the State moved to have the defendant's prior convictions involving dishonesty or false statements admitted for impeachment purposes pursuant to ER 609(a)(2), should the defendant choose to testify. The motion was granted by agreement between the parties.

The defendant did not testify at trial, but sought to establish a diminished capacity defense based on extreme intoxication. The only evidence that the defendant offered was expert testimony from Dr. Robert Julien, a pharmacologist specializing in the effect of drugs on brain function. Anticipating that Dr. Julien's testimony would relate out-of-court statements made by the defendant, the State filed a supplemental trial memorandum before Dr. Julien took the stand to apprise the court of its intention to cross-examine Dr. Julien with the defendant's previously admitted prior convictions pursuant to ER 806.

Determining that impeachment was permissible in accordance with ER 806, the court granted the State's motion to cross-examine Dr. Julien with the defendant's prior convictions. The court advised counsel that a limiting instruction is typically given when "an expert was going to be relating material that was not admissible as substantive evidence . . . explaining to the jury the limited purposes under which this material can be offered." Verbatim Report of Proceedings (VRP)

3

(July 1, 2014) at 27. Consequently, the court decided to prohibit the prosecution from specifying the details of the convictions due to the "novel situation" of "indirect impeachment" that was presented. *Id.* at 28-29.

Additionally, before Dr. Julien testified, the court offered to provide a limiting instruction to the jury stating that the defendant's out-of-court statements were offered only to show the basis of Dr. Julien's opinion. The State initially agreed to the instruction, but changed its position after defense counsel expressly requested that no instruction be offered at all. The court agreed not to give the limiting instruction prior to Dr. Julien's testimony.

Dr. Julien testified that the defendant was in a state of alcohol-induced blackout that prevented him from forming the requisite legal intent to commit assault. His opinion was based on a phone interview conducted with the defendant and a review of the police and witness reports. During his testimony, Dr. Julien related the defendant's out-of-court statements regarding the quantity of alcohol he had consumed. Based on the defendant's self-report, Dr. Julien estimated that the defendant's blood alcohol concentration (BAC) was 0.4 percent at the time of the arrest, "enough to guarantee blackout." *Id.* at 55.

The State cross-examined Dr. Julien with the defendant's prior convictions for theft. Dr. Julien conceded that the accuracy of his conclusions depended on the

veracity of the defendant's statements, but testified that he would not have taken the prior convictions into consideration in generating his report.

After the case was submitted to the jury, defense counsel informed the court that she had just discovered *State v. Lucas*, 167 Wn. App. 100, 271 P.3d 394 (2012),[1] which she believed prohibited impeachment of the defendant with his prior convictions through cross-examination of the expert witness. Counsel stated that she would file a motion for mistrial based on *Lucas* if the jury came back with a guilty verdict. The jury found the defendant guilty as charged, and defense counsel filed a motion for mistrial or a new trial in the alternative.

After hearing arguments on the defense's motion, the court concluded that *Lucas* was controlling precedent and it had erred by permitting impeachment of the defendant pursuant to ER 806. The court granted the motion for new trial in accordance with CrR 7.5(a)(6). The State appealed.

Finding the case indistinguishable from *Lucas*, Division One of the Court of Appeals affirmed the trial court's decision to grant the motion for new trial in a published opinion. *State v. Mohamed*, 189 Wn. App. 533, 535, 358 P.3d 442 (2015). The State then petitioned for review to this court, which we granted pursuant to RAP 13.4(b). *State v. Mohamed*, 184 Wn.2d 1033 (2016).

---

[1] Although *Lucas* was decided in 2012, neither defense counsel nor the trial court was aware of the case.

ANALYSIS

"Except where questions of law are involved, a trial judge is invested with broad discretion in granting motions for new trial. The exercise of that discretion will not be disturbed on appeal absent an abuse of discretion." *State v. Williams*, 96 Wn.2d 215, 221, 634 P.2d 868 (1981). Where, as here, a motion for new trial is based on an alleged legal error in interpreting an evidentiary rule, the order granting a new trial is reviewed de novo. *State v. Foxhoven*, 161 Wn.2d 168, 174, 163 P.3d 786 (2007).

A. DEFENDANT'S HEARSAY STATEMENTS

Out-of-court statements "offered in evidence to prove the truth of the matter asserted" are hearsay, ER 801(c), and generally inadmissible, ER 802. When hearsay statements are admitted into evidence, however, ER 806 permits impeachment of the hearsay declarant as if he or she had taken the stand as a witness:

> When a hearsay statement . . . has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness.

As the rule states, impeachment of the declarant is permissible only when a hearsay statement is admitted into evidence. *See State v. Fish*, 99 Wn. App. 86, 95, 992 P.2d 505 (1999) ("ER 806 authorizes impeachment of a declarant only when the declarant's statement has been offered to prove the truth of the matter

6

asserted. If the statement is offered for some other nonhearsay purpose, ER 806 does not apply."). Thus, the applicability of ER 806 in this case depends on whether the defendant's out-of-court statements were offered for the truth of the matter asserted, therefore constituting hearsay, or if they were limited to some other nonhearsay purpose.

To determine whether the defendant's statements were offered for their truth or some other nonhearsay purpose, we must look closely at the events that unfolded at trial to evaluate the context in which the statements were actually offered and used. The record shows that the defendant's statements were not offered *solely* for the nonhearsay purpose of providing the factual basis for Dr. Julien's expert opinion; they were *also* offered for the hearsay purpose of proving their truth. Therefore, impeachment of those statements with the defendant's prior convictions was permissible in accordance with ER 806.

The defendant contends that his out-of-court statements were not offered for their truth, but rather for the nonhearsay purpose of showing the basis for Dr. Julien's expert opinion. It is unquestionable that this is a nonhearsay purpose for which the defendant's statements were relevant, see ER 703 and 705, but the defendant's assertion is not supported by what actually happened at trial. It is evident from the record that the defendant's statements were, in fact, offered for their truth because (1) the defendant offered his own out-of-court statements,

7

(2) defense counsel expressly declined a limiting instruction, (3) the defendant's out-of-court statements were the *only* evidence that could support the expert witness' opinion, and (4) defense counsel agreed to an instruction that directed the jury to consider the defendant's credibility. Based on these key facts, the defendant's statements were effectively admitted for their truth. Furthermore, *Lucas* must be overturned to the extent that the decision does not mention whether or not a limiting instruction had been offered, given, or declined in that case.

1. *Defense counsel declined a limiting instruction; therefore, the jury was permitted to consider the defendant's statements for their truth*

Expert witnesses are permitted to base their opinions on otherwise inadmissible evidence, so long as it is "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." ER 703. An expert may testify to these underlying facts or data. ER 705. It was permissible for Dr. Julien to rely on the defendant's out-of-court statements regarding how much alcohol he consumed to calculate the defendant's BAC. The issue that the trial court wrestled with was the fact that the out-of-court statements were admissible in accordance with ER 705 to show the basis of Dr. Julien's

8

opinion, but inadmissible as substantive evidence of how much alcohol the

defendant had actually consumed.[2]

When evidence is admissible for one purpose but inadmissible for another,

ER 105 directs that "the court, upon request, shall restrict the evidence to its proper

scope and instruct the jury accordingly." Recognizing that the defendant's

statements could be used by the jury for an improper purpose, the trial court

offered to provide a limiting instruction and even proffered proposed language:

> The limiting instruction that I have in mind goes something like
> this: Ladies and gentlemen, you are about to hear the testimony of
> Dr. Robert Julien. And before he takes the stand, the Court is going to
> provide you the following instruction. Statements made by the
> defendant to Dr. Julien are being offered only for the limited purpose
> of seeking to help explain Dr. Julien's opinions and are to be
> considered by you only for that limited purpose.

---

[2] It is undisputed that an expert witness may rely on and testify to otherwise inadmissible evidence that forms the basis of his or her opinion pursuant to ER 703 and 705. *See In re Det. of Coe*, 175 Wn.2d 482, 513-14, 286 P.3d 29 (2012) ("A trial court may allow an expert to reveal the underlying basis for her opinion if doing so will help the jury understand the expert's opinion."); *State v. Russell*, 125 Wn.2d 24, 74, 882 P.2d 747 (1994) ("ER 703 thus permits expert opinion testimony based on hearsay data that would be otherwise inadmissible in evidence, while ER 705 . . . authorizes the admission of expert opinion testimony without prior disclosure of the facts or data which underlie the opinion."). The defendant incorrectly asserts that allowing impeachment pursuant to ER 806 is inconsistent with these evidentiary rules. The cases that the defendant relies on for this point are unhelpful because they involve testimony that was limited to its proper purpose or was properly excluded by the trial court. *See State v. Martinez*, 78 Wn. App. 870, 881, 899 P.2d 1302 (1995) (trial court did not abuse its discretion in limiting the scope of expert witness' testimony); *State v. Anderson*, 44 Wn. App. 644, 652-53, 723 P.2d 464 (1986) (exclusion of defense's expert witness testimony regarding defendant's out-of-court statements was not an abuse of discretion); *State v. Fullen*, 7 Wn. App. 369, 383-84, 499 P.2d 893 (1972) (exclusion of psychiatrist's testimony about defendant's out-of-court statements was harmless error). The defendant's hearsay statements in this case were neither properly limited nor excluded.

VRP (July 1, 2014) at 29-30. Plainly, this instruction would have been sufficient to limit the defendant's out-of-court statements to their proper purpose. Had the court given this instruction, the evidence would have been admitted solely for a nonhearsay purpose, barring impeachment pursuant to ER 806.

However, after the court offered its limiting instruction, the following colloquy took place:

> MS. SILBOVITZ [defense counsel]: Your Honor, I'm considering it and thinking it through my head. Generally I'm not in favor of limiting instructions. I'm not -- *I'm not asking you to provide the limiting instruction.*
> THE COURT: Understood. With that in mind, does that change the State's position at all?
> MR. DICKINSON [deputy prosecutor]: Well, if it's a tactical decision by the defense not to give a limiting instruction, I don't disagree then. I think then we should not give it.

*Id.* at 31 (emphasis added). Thus, by the agreement of the parties, the court did not offer a limiting instruction prior to Dr. Julien's testimony.

We presume that a jury will follow the instructions provided to it. *State v. Kalebaugh,* 183 Wn.2d 578, 586, 355 P.3d 253 (2015) (citing *State v. Grisby,* 97 Wn.2d 493, 499, 647 P.2d 6 (1982)). The corollary to this presumption is that where evidence could be relevant for multiple purposes, a jury cannot be expected to limit its consideration of that evidence to a proper purpose without an appropriate instruction to that effect. Moreover, in the absence of a limiting instruction, the jury is permitted to consider the evidence for *any* purpose,

10

including its truth. *See State v. Myers*, 133 Wn.2d 26, 36, 941 P.2d 1102 (1997) ("[A]bsent a request for a limiting instruction, evidence admitted as relevant for one purpose is deemed relevant for others."); *State v. Kontrath*, 61 Wn.2d 588, 591, 379 P.2d 359 (1963) ("The court's refusal to give appellant's requested instruction allowed the jury to give unlimited consideration to the evidence.").

In fact, the jury here was actually instructed that "[i]n order to decide whether any proposition has been proved, you must consider all of the evidence that [the court] ha[s] admitted that relates to the proposition." Clerk's Papers (CP) at 90. There was further instruction to "consider information that the defendant has been convicted of a crime only in deciding what weight or credibility to give the *defendant's statements*." *Id.* at 94 (emphasis added). Defense counsel explicitly agreed to this instruction without objection or modification.[3] In the absence of any limitations, the jury was not only *permitted* to consider the defendant's statements as substantive evidence, not merely as the factual basis of the expert's opinion, but was also *directed* to evaluate the defendant's statements for their credibility.

---

[3] The jury instruction that was given was a slight modification to the recommended jury instruction for impeachment with prior conviction evidence when the defendant is a witness. *Compare* CP at 94 (Instr. 4), *with* 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 5.05, at 172 (3d ed. 2008) (WPIC). Defense counsel's own proposed jury instruction was identical to WPIC 5.05.

As the State correctly points out, "If a party wishes to offer a statement for a non-hearsay purpose, that party must request an instruction precluding consideration of the truth of the statement." Suppl. Br. of Pet'r at 6. We have held that when a party fails to request a limiting instruction, that party is precluded from arguing that the lack of a limiting instruction was harmful error. *State v. Athan*, 160 Wn.2d 354, 383, 158 P.3d 27 (2007). Here, defense counsel did not merely fail to request a limiting instruction; she expressly declined the court's offer to provide one. A party cannot refuse an instruction that would have limited the evidence to its proper purpose and then later claim that the evidence should be treated as if the limiting instruction had been given. *Cf. State v. Boyer*, 91 Wn.2d 342, 345, 588 P.2d 1151 (1979) (invited error doctrine).[4]

2.     *Defendant's out-of-court statements were the only evidence of a foundational fact necessary to his theory of the case*

The consequences of declining a limiting instruction were compounded by the way in which the defendant's out-of-court statements were used to support his

---

[4] The defendant asserts the State, as the opponent to the evidence, had the burden of requesting a limiting instruction. Suppl. Br. of Resp't at 17-20. We have held that failure to request a limiting instruction waives the right to assign error to the lack of a limiting instruction on appeal. *See Lockwood v. AC&S, Inc.*, 109 Wn.2d 235, 255, 744 P.2d 605 (1987); *State v. Newbern*, 95 Wn. App. 277, 295-96, 975 P.2d 1041 (1999); *State v. Barber*, 38 Wn. App. 758, 771, 689 P.2d 1099 (1984). However, the State has not assigned error to the trial court's failure to provide a limiting instruction, and we have consistently held that a trial court has no obligation to provide a limiting instruction sua sponte. *See State v. Russell*, 171 Wn.2d 118, 123-24, 249 P.3d 604 (2011) (citing *Athan*, 160 Wn.2d at 383; *Myers*, 133 Wn.2d at 36; *State v. Hess*, 86 Wn.2d 51, 52, 541 P.2d 1222 (1975); *State v. Noyes*, 69 Wn.2d 441, 447, 418 P.2d 471 (1966)).

theory of the case. Because these statements were the only evidence of a foundational fact on which his only defense rested, it was necessary for the jury to consider the statements for their truth.

The defendant's voluntary intoxication defense was based solely on Dr. Julien's testimony. Since there was no toxicology report, Dr. Julien had to calculate the defendant's BAC based on the defendant's self-report of how much alcohol he had consumed prior to the arrest. The officers testified that they believed the defendant was intoxicated because he smelled of alcohol and was slurring his speech, but this testimony only corroborates that the defendant was intoxicated. It provides no basis for calculating the defendant's BAC.[5]

Furthermore, Dr. Julien's testimony was predicated entirely on the truthfulness of the defendant's statements. On cross-examination, Dr. Julien admitted that if the defendant's self-report was "garbage," then his conclusions would also be "garbage." VRP (July 1, 2014) at 69. Dr. Julien further testified that he did not assess the veracity of the defendant's statements, but stated that he would "have to leave it to the jury, to the trier of fact, to determine the accuracy, or lack thereof, of this individual." *Id.* at 68-69. The truthfulness of defendant's out-

---

[5] Respondent's counsel conceded at oral argument that there was no independent corroborating evidence of the quantity of alcohol the defendant had consumed. Wash. Supreme Court oral argument, *State v. Mohamed*, No. 92261-6 (June 7, 2016), at 17 min., 51 sec., *audio recording by* TVW, Washington State's Public Affairs Network, http://www.tvw.org.

of-court statements went directly to the viability of his voluntary intoxication defense. Thus, in order to determine the weight and credibility of Dr. Julien's opinion, the jury *had* to consider whether the defendant's statements were truthful.

That the defendant's statements were, in fact, offered for their truth is made evident by the fact that if the defendant's statements were false, Dr. Julien would not have had any basis for his opinion and his testimony would have been irrelevant. The trial court has the discretion to exclude evidence that lacks relevance.[6] ER 402. Thus, within the context of the defendant's theory of the case, the out-of-court statements were, in effect, offered for their truth, not merely to show the basis of the expert's opinion.

B. *STATE V. LUCAS*

The defendant contends that the trial court and Court of Appeals correctly determined that *Lucas* barred impeachment with his prior convictions in this case. The Court of Appeals in *Lucas* correctly stated that "out-of-court statements offered at trial as the basis of an expert's opinion are not hearsay and, thus, do not expose the declarant to impeachment under ER 806." 167 Wn. App. at 109-10. However, this statement is true only if the evidence is limited to its proper purpose. The court made no mention of whether a limiting instruction was offered to the

---

[6] In fact, before Dr. Julien took the stand, the prosecution brought a foundational objection to Dr. Julien's testimony, asserting that he lacked the basis for his opinion because he relied solely on the defendant's self-report.

jury. Consequently, *Lucas* is overturned to the extent that it bars impeachment pursuant to ER 806 even in instances where hearsay evidence is not limited to its proper purpose.[7]

C.    IMPEACHMENT WITH PRIOR CONVICTION EVIDENCE

ER 806 permits the credibility of a hearsay declarant to be attacked "by *any* evidence which would be admissible for those purposes if declarant had testified as a witness." (Emphasis added.) According to the plain language of the rule, the defendant could be impeached with his prior convictions, which were admissible pursuant to ER 609 and had been admitted for impeachment purposes during pretrial motions.

Since the jury had to determine whether the defendant's out-of-court statements to Dr. Julien were true, the jury was entitled to consider the evidence necessary to carry out this responsibility. This includes evidence showing that the declarant is dishonest or untrustworthy. The Rules of Evidence contemplate that prior conviction evidence is admissible for this purpose. ER 609(a)(2).

Although the danger of undue prejudice resulting from the admission of prior convictions is undeniable, the defendant makes no assertion that impeachment with his prior convictions was unduly prejudicial. In fact, defense

---

[7] Defendant's appellate counsel stated at oral argument that she was defense counsel in *Lucas* and that a limiting instruction was never raised. Wash. Supreme Court oral argument, *supra*, at 24 min., 22 sec.

counsel's only objection at trial was for relevance. Consequently, the question of prejudice is not before us, and impeachment pursuant to ER 806 was permissible in accordance with the plain language of the evidentiary rules.

CONCLUSION

ER 806 permits impeachment of a hearsay declarant to the same extent as a witness. It is a broad rule that applies to all declarants, all forms of impeachment, all types of cases, and all parties. The purpose of this rule is to provide the jury with the information necessary to weigh the credibility of the evidence presented.

This particular case presents an unexpected but permissible use of ER 806: impeachment of a nontestifying defendant in a criminal case through cross-examination of his own expert witness. In light of the facts before us, we hold that where (1) a defendant offers his or her own out-of-court statements through an expert witness, (2) no limiting instruction is requested or provided, (3) the jury is directed to consider the defendant's credibility, and (4) no other evidence was offered that could form the foundation of the expert's opinion, the defendant's out-of-court statements are admitted for the truth of the matter asserted and may be considered by the jury as substantive evidence. Under these specific circumstances, impeachment pursuant to ER 806 is allowed.

We reverse the Court of Appeals and reinstate the conviction.

WE CONCUR:

Madsen, C.J.

Stephens, J.

Johnson, J.

Wiggins, J.

Owens, J.

González, J.

Fairhurst, J.

Gordon McCloud, J.