**IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 78763-2-I |
| Respondent, | |
| v. | DIVISION ONE |
| PAUL CUEVAS ADAMSON, | UNPUBLISHED OPINION |
| Appellant. | |

LEACH, J. — Paul Adamson appeals his judgment and sentence for child molestation in the third degree. He claims the trial court should have instructed the jury on attempted child molestation because it received evidence that supported a conviction of attempted molestation to the exclusion of actual molestation. We agree, reverse the conviction, and remand for a new trial consistent with this opinion.

**FACTS**

In 2017, the State charged Paul Adamson with one count of child molestation in the third degree. Trial testimony showed the following facts.

In 2017, 14-year-old J.C. lived part time with his mother, B.C. At the time, she was dating Jenny York. Adamson and York dated in the past and were still good friends. B.C. wanted to meet Adamson and suggested York bring him to her house on June 22 of that year. That same day, J.C.'s friends A.A. and C.R. went to B.C.'s house to spend the night.

During the evening, Adamson drank beer and cooked dinner. The group listened

to music, danced, played basketball and football, and played video games. At one point Adamson wanted York to drive him to Seattle to buy J.C. a pair of shoes. But, B.C. said no.

As the evening wore on, B.C. offered to let Adamson sleep on the couch in the living room so York did not have to drive him home. At some point, B.C. and York went to B.C.'s bedroom. The bedroom's fan made it hard to hear anything happening in the rest of the house.

The boys continued playing video games in J.C.'s room. Inside the room, which had no door, was a mattress and box spring on a frame, and a futon folded into the couch position. J.C. and C.R. testified that, at some point during the evening, Adamson watched a video on his phone on Pornhub with "naked people" doing "sexual things" while he was in the bedroom with them.

Later, C.R. and A.A. went to the kitchen to make food. C.R. testified that J.C. did not go with them. J.C. testified that he did go to the kitchen and then Adamson followed him back to his room. Either way, J.C. ended up in his room, sitting on his futon with his back to the wall, while Adamson reclined on the futon.

J.C. testified that Adamson asked several times whether he wanted his legs massaged. J.C. said no each time. Then, Adamson grabbed J.C.'s ankle, put his hand down behind the waistband of J.C.'s shorts, and touched J.C.'s testicles. J.C. immediately stood up and left the room.

J.C. sent his mother several texts to let her know he wanted to talk. B.C. opened the door to her bedroom and they went to her bathroom to talk privately. J.C. testified that he told his mother that Adamson touched his "private part." B.C. testified that J.C.

said Adamson "grabbed" his "balls." York testified that she talked to J.C. about what happened several times after the incident. York testified that J.C. told her that Adamson "reached his hand down his pants and tried to grab his balls and [J.C.] brushed him away and [Adamson] wasn't able to get to them."

B.C. called 911. Officers from the City of Kent Police Department came to the house. After speaking with B.C., they went inside. They found Adamson asleep on the futon. The officers woke Adamson up, took him outside, and arrested him. Adamson consented to a search of his bag by the front door. The officers found, among other things, condoms and personal lubricant.

<u>Jury Instructions</u>

During the trial, a scheduling issue for York arose requiring that she testify before J.C. The State told the court that the parties anticipated York would testify that J.C. told her Adamson only tried to touch him but did not make contact. The State said it would not object to York's hearsay statement because both parties agreed York's testimony was evidence intended to impeach J.C.'s testimony. But, because York was to testify before J.C., the jury would hear her impeachment of J.C. before he testified. As the court reiterated, "The statement allegedly made by [J.C.] to . . . York would be admissible during [her] testimony without hearsay objection as basically early anticipated impeachment." York testified as anticipated. Neither party requested any instruction limiting the jury's consideration of her testimony.

The defense proposed jury instructions that included one on attempted child assault in the third degree and one on child molestation in the fourth degree. During a colloquy, the court and the State agreed that attempted child molestation in the third

degree met the legal standard of a lesser included crime. Defense counsel said York's testimony, that J.C. told her Adamson "reached down his pants and tried to grab his balls and he brushed him away and wasn't able to get to them", supported attempted molestation but not actual molestation. The court pointed out that York's testimony was impeachment evidence, and not substantive evidence, because the defense did not proffer a hearsay exception at the time of the testimony. So, the court did not think that York's testimony could support a decision to instruct the jury on attempt.

Defense counsel recalled J.C. saying "yes" to a question on cross examination about whether J.C. stopped Adamson from touching him. The court recalled that J.C. testified the touch was fleeting because he immediately stood up. The court believed J.C.'s statement, that he "blocked" Adamson, meant he blocked Adamson "from going further" after the first contact.

The court stated it did not see how a reasonable juror could conclude that Adamson made contact with J.C.'s groin given the evidence about J.C. and Adamson's positions on the futon. But, because York's testimony describing what J.C. reported to her was for impeachment purposes, the only substantive evidence regarding the incident came from J.C.

The court said,

"J.C. testified very clearly that he was touched under his underwear. And whether he was then touched in his groin under his underwear and there was actual contact made with his testicle or not . . . once there was touching under the underwear into the groin we're into evidence of child molestation.
. . . I think it would be error for me to give the lesser includeds having now heard all of the testimony."

Later, the court concluded,

"there are significant arguments to be made with respect to the credibility

- 4 -

of [J.C.'s] testimony in general but there is no countervailing testimony with respect to or evidence with respect to the incident that occurred and the Court cannot under existing case law base a decision to give a lesser included simply on a concern that the jury might disbelieve the evidence pointing to the guilt of the defendant. There may very well be evidence to support an acquittal but the Court is concerned that it would be error to provide . . . the instructions as proposed [by the defense]."

Defense counsel objected to failure to give the attempt instruction.

The court instructed the jury only on child molestation in the third degree.  After deliberations, the jury returned a guilty verdict.

Adamson appeals.

**ANALYSIS**

Adamson claims the court should have instructed the jury on attempted molestation in the third degree, improperly seated a biased juror, and sentenced him above the statutory maximum.  Adamson also claims he received ineffective assistance of counsel.  Because we decide the court should have instructed the jury on attempted child molestation, we do not reach Adamson's other claims.

When supported by the record, a defendant has the statutory right to have the jury instructed on an attempt to commit the charged offense.[1]  This allows the jury to decide whether to convict a defendant of the crime charged or for the lessor offense of an attempt to commit the crime charged.[2]

Washington courts use the two part test described in State v. Workman to decide whether to grant a defendant entitlement to a jury instruction on attempt.[3]  The first prong, called the legal prong, requires that each element of the lesser offense be a

---

[1] State v. Wright, 152 Wn. App. 64, 71, 214 P.3d 968 (2009); RCW 10.61.003.
[2] RCW 10.61.010.
[3] 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978).

necessary element of the charged offense.[4]  The second prong, called the factual prong, requires that the evidence "raise an inference that only the lesser included/inferior degree offense was committed to the exclusion of the charged offense."[5]  This court analyzes this question by viewing all the evidence presented in the light most favorable to the party requesting the instruction.[6]  So, "if there is even the slightest evidence that the defendant may have committed" the inferior crime, the court should instruct the jury on the lesser included offense.[7]

Adamson asserts the Workman test does not apply here because a defendant is always entitled to an instruction on attempt even if the facts do not support an inference that he only committed attempt and not the full offense.  Because Adamson did not raise this statutory argument below, and makes no constitutional claim, we decline to review his argument.[8]

Instead, applying the Workman test, we conclude that the trial court should have instructed the jury on attempted child molestation.

Attempted child molestation is a lesser included offense for child molestation.[9]  So, the only issue here is whether the evidence satisfied the Workman test's factual prong.  ER 105 states that if the court admits evidence for a limited purpose, it "upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly."  Courts "presume that a jury will follow the instructions provided to it."[10]  And, absent a

---

[4] Workman, 90 Wn.2d at 447-448.
[5] State v. Fernandez-Medina, 141 Wn.2d 448, 455, 6 P.3d 1150 (2000).
[6] Fernandez-Medina, 141 Wn.2d at 455-56.
[7] State v. Parker, 102 Wn.2d 161, 164, 683 P.2d 189 (1984).
[8] RAP 2.5(a); Roberson v. Perez, 156 Wn.2d 33, 39, 123 P.3d 844 (2005).
[9] In re Heidari, 159 Wn. App. 601, 605, 248 P.3d 550 (2011).
[10] State v. Mohamed, 186 Wn.2d 235, 244, 375 P.3d 1068 (2016).

limiting instruction, "the jury is permitted to consider the evidence for any purpose, including its truth."[11]

York testified that she and J.C. talked about what happened several times after the incident. She said J.C. told her he was able to brush Adamson away before he made contact. During a colloquy, the State asked the court to admit York's testimonial evidence only for impeachment purposes. But, the State did not object to the evidence at the time York testified and never asked for an instruction limiting the jury's use of this evidence. So, the court never told the jury that it could only consider York's testimony as impeachment evidence. And, defense counsel in closing relied upon this evidence as substantive evidence to what happened, stating, "If you think that Adamson tried to touch [J.C.] but that [J.C.] stopped him, which is what he told [York] happened, you must find him not guilty." The court instructed the jury that if it ruled any of the evidence was inadmissible, or directed the jury to disregard the evidence, then the jury was not to use that evidence in deliberations or to reach its verdict. Otherwise, the jury was to "consider all of the evidence . . . admitted that relates to the proposition." So, the jury received York's testimony as substantive evidence of what occurred and not just evidence impeaching J.C.'s testimony. Because this evidence supports an inference that Adamson only attempted to molest J.C., the trial court erred by not giving the requested instruction on attempted child molestation.

Because we reverse Adamson's conviction for this reason, we do not reach Adamson's other claims.

---

[11] Mohamed, 186 Wn.2d at 244.

## CONCLUSION

We reverse and remand for a new trial. Because substantive evidence provided to the jury supported the conclusion that Adamson only attempted to molest J.C., Adamson had a statutory right to an instruction on attempted child molestation.

_Leach, J._

WE CONCUR:

_Andrus, J._