**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 80053-1-I |
| | ) | |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | |
| CHARLES LINNELL BLUFORD, | ) | |
| | ) | UNPUBLISHED OPINION |
| Appellant. | ) | |
| | ) | |

MANN, C.J. — Charles Bluford appeals his convictions for rape in the first degree and robbery in the first degree. He argues that the court erred by admitting a hearsay statement, that his counsel was ineffective, and that cumulative error violated his right to a fair trial. He also argues that one of the community custody conditions imposed on him is not crime-related, that the court erred by requiring him to register as a firearm offender, and that the court erred by imposing a discretionary legal financial obligation (LFO). We affirm Bluford's convictions, but remand to strike the LFO.

<u>FACTS</u>

Bluford was charged and convicted of seven counts of robbery in the first degree, one count of indecent liberties, and one count of first degree rape, for a series of

Citations and pin cites are based on the Westlaw online version of the cited material.

offenses involving multiple victims in Seattle, Renton, Bellevue, and Shoreline.
Bluford's convictions were overturned on appeal after the Supreme Court held that the
trial court abused its discretion by joining all of the offenses in a single trial. State v.
Bluford, 188 Wn.2d 298, 303, 393 P.3d 1219 (2017).

On remand, the State amended the information to five counts, including rape in
the first degree (count 1), and robbery in the first degree (count 2) for a March 10, 2012,
incident involving victim R.U. Counts 1 and 2 were tried by jury in October 2018.

Testimony at trial established as follows. On March 10, 2012, R.U. drove home
from work alone at about 10:30 p.m. and activated the electronic garage door as she
pulled up to her house on the end of a dead end street. She parked outside the garage
and went to get something from the trunk of her car. As she bent over the trunk, a man
emerged from behind a large tree. At trial, R.U. identified the man as Bluford.

Bluford approached R.U., called out to her, and pressed a gun against her side.
Bluford directed R.U. into her open garage and pushed her against a wall. Bluford
pulled out a condom, and pulled down R.U.'s leggings. R.U. kept pulling her leggings
back up, but Bluford forcefully inserted his finger inside her vagina repeatedly. Bluford
then forced R.U. to her knees, and forced his penis into her mouth.

A car pulled up in front of the house, blocking the driveway, and R.U. heard a
woman say, "That's enough, that's enough." R.U. broke free and activated the
electronic garage. Bluford had already taken R.U.'s ring set, and he grabbed R.U.'s
purse as the door was closing. R.U.'s phone was in her purse.

Police tracked R.U.'s phone, and discovered that an individual had replaced
R.U.'s Subscriber Identity Module (SIM) card with their own SIM card with a different

phone number. Police determined that a SIM card belonging to Cheryl Woodward was used in R.U.'s cellphone on March 11, 2012. Woodward communicated with Bree Brazille on the phone. When police served a search warrant on Woodward's home on March 15, 2012, officers recovered R.U.'s phone containing Woodward's SIM card. Woodward, a long-time acquaintance of Brazille, testified that Brazille sold her the phone. Woodward believed that Brazille was married to Bluford. Woodward showed officers a picture of Bluford and Brazille that she had taken on the phone.

Also on March 15, 2012, King County Sheriff's detectives stopped Bluford and Brazille. Police took Brazille's phone at the stop. R.U.'s engagement wedding ring set was in Brazille's purse. Officers recovered a marriage license between Bluford and Brazille. Detectives served a search warrant on the address listed on the marriage certificate, where officers recovered R.U.'s purse. Police also found a document showing that Bluford owed money to a debt collector at the residence. Because Brazille was deceased at the time of trial, the State moved to admit Brazille's statements to officers that she shared the phone with Bluford, which the court allowed.

The jury convicted Bluford as charged. After conviction on these counts, Bluford entered a guilty plea to felony harassment and two counts of theft in the first degree for the conduct stemming from the other cases. At sentencing, the court imposed an indeterminate sentence of 229 months to life for the rape count, running the other counts concurrently. The court imposed a lifetime term of community custody. Bluford appeals.

## ANALYSIS

### A. Testimony Impeaching Non-testifying Declarant

Bluford first argues that the trial court erred by admitting Brazille's hearsay statement to the detective that she shared her phone with Bluford. He contends the court erred because Brazille's statement was not admissible for impeachment purposes under ER 806 and that the defense did not open the door. We disagree.

We review a trial court's evidentiary ruling for an abuse of discretion. State v. Mohamed, 186 Wn.2d 235, 241, 375 P.3d 1068 (2016). Hearsay is an out-of-court statement made by someone other than the testifying declarant that is offered for the truth of the matter asserted. ER 801(c). While hearsay is generally inadmissible, when hearsay statements are admitted into evidence, ER 806 permits impeachment of the hearsay declarant.

> When a hearsay statement . . . has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time, inconsistent with the declarant's hearsay statement, is not subject to any requirement that the declarant may have been afforded an opportunity to deny or explain.

ER 806.

During the State's case, Detective Marylisa Priebe-Olson testified about the investigation. She said that Brazille identified the phone as hers. Detective Kris Knudsen testified that Brazille was searched incident to arrest and that he interviewed Brazille after her arrest. On cross-examination, defense counsel asked Detective Knudsen about Brazille's phone and referred to the phone as "her" phone repeatedly. On redirect, the State confirmed that Detective Knudsen obtained this information from

his conversation with Brazille, and that she said the phone was hers. When asked whether Brazille shared the phone with someone, Knudsen said "She said that was her cell phone number."

After Knudsen concluded his testimony, the State alerted the court that it intended to call Detective Priebe-Olson again to illicit testimony that Brazille shared the phone with Bluford. The defense did not object.

Under ER 806, the State moved to admit evidence that Brazille told Detective Priebe-Olson that Brazille and Bluford shared the phone. The trial court determined that when defense counsel questioned Detective Knudsen and referred to the phone as "her phone," it implied to the jury that the phone belonged to Brazille only. In accordance with this ruling, the State asked Detective Priebe-Olson "when you spoke with Ms. Brazille on that particular day, did she tell you that she and Charles Bluford shared the same cell phone," to which Detective Priebe-Olson replied "yes, she did."

Despite Bluford's contentions that the court erred in admitting the testimony because defense counsel did not open the door to such testimony, Bluford cannot demonstrate that the trial court abused its discretion. A party may open the door during the questioning of a witness to otherwise inadmissible evidence. State v. Korum, 157 Wn.2d 614, 646, 141 P.3d 13 (2006). "Where the defendant 'opened the door' to a particular subject, the State may pursue the subject to clarify a false impression." State v. Fisher, 165 Wn.2d 727, 750, 202 P.3d 937 (2009). Here, defense counsel's questioning of Detective Knudsen could have implied to the jury that the phone belonged to Brazille alone because defense counsel referred to the cell phone as "her"

phone. The court did not abuse its discretion by allowing the clarifying testimony of Detective Priebe-Olson.

Even if the court erred in admitting the single hearsay statement, the error was harmless. An evidentiary error is not prejudicial unless the error materially affected the outcome of the trial. In opening argument, defense counsel said that although the phone belonged to Brazille, "Bluford would use it sometimes." There was significant evidence, besides the phone, that implicated Bluford in R.U.'s robbery and assault.[1] For these reasons, even if there was an error, it was harmless.

B. Ineffective Assistance of Counsel

Bluford next contends that his counsel was ineffective by not objecting to evidence of Bluford's debt. We disagree.

To demonstrate ineffective assistance of counsel, the defendant must show that: (1) defense counsel's representation was deficient, falling below an objective standard of reasonableness based on consideration of all the circumstances and (2) defense counsel's deficient representation prejudiced the defendant. State v. McFarland, 127 Wn.2d 322, 334, 899 P.2d 125 (1995). The defendant establishes the second prong when there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. McFarland, 127 Wn.2d at 335.

Counsel's performance is presumed to be reasonable. State v. Brett, 126 Wn.2d 136, 198, 892 P.2d 29 (1995). The defendant must show the absence of a legitimate

---

[1] R.U. identified Bluford in court, the picture of Bluford on R.U.'s phone matched her description of her assailant, R.U. accurately described Bluford's vehicle, and R.U.'s stolen possessions were recovered from Bluford's residence.

strategic or tactical reason supporting the challenged conduct by counsel. State v. Mannering, 150 Wn.2d 277, 286, 75 P.3d 961 (2003).

At trial, the State presented evidence of a document sent to Bluford by a debt collection agency, Alliance One, showing that Bluford owed $1,735.75. Defense counsel did not object. Then, during closing, the prosecutor used the debt as evidence of a possible financial motive, arguing:

> What is the motive? Was it a financial motive? We know from the Defendant's mail that he was in arrears. According to his Alliance One, he owed $1737.75. Did it start off as a financial motive? Was the motive because he needed a wedding ring for his fiancée [Brazille]? We know that they were going to be getting married.

The prosecutor continued by telling the jury that only the person who committed the crime knows the motive and motive is not an element of the crime that needs to be proven.

Bluford contends that defense counsel was ineffective for failing to object because evidence of poverty or debt is generally inadmissible to show motive, and an objection would have been sustained because the evidence was irrelevant. We agree with Bluford that "[e]vidence of poverty is generally not acceptable to show motive." State v. Kennard, 101 Wn. App. 533, 541, 6 P.3d 38 (2000). But the letter from Alliance One was offered by the State for two reasons. First, because the letter was addressed to Bluford at the same address as Brazille, it provided evidence that Bluford lived with Brazille at the house where the victim's stolen property was recovered. And second, the letter was offered to show a possible motive, i.e., that Bluford may not have had sufficient funds to buy Brazille a wedding ring. Thus, because the evidence was not offered merely as evidence of poverty leading to motive, it likely would have been

admissible as relevant.  Bluford cannot show that defense counsel was deficient for failing to object.[2]

C.  Cumulative Error

Bluford also argues cumulative error.  Under the cumulative error doctrine, the defendant must show that while multiple errors, when standing alone, are insufficient grounds for reversal, the combined effect of these errors requires a new trial.  State v. Clark, 187 Wn.2d 641, 649, 389 P.3d 462 (2017).  Bluford has not demonstrated that the trial court erred by admitting hearsay or that counsel was ineffective.  While Bluford attempts to characterize these alleged deficiencies as major errors, these are minor instances that had little to no effect on the jury's verdict.  Therefore, he cannot demonstrate cumulative error.

D.  Community Custody Condition

Bluford argues that the community custody condition regarding sexual relationships is not crime related and infringes on Bluford's constitutional rights.  We disagree.

We review community custody conditions for an abuse of discretion and will reverse them if they are manifestly unreasonable.  State v. Nguyen, 191 Wn.2d 671, 678, 425 P.3d 847 (2018).  The court may impose and enforce crime-related prohibitions and affirmative conditions as part of the sentence.  RCW 9.94A.505(9).  A

---

[2] As the State correctly points out, defense counsel addressed the potential financial motive head on, arguing "The defendant was in arrears for a debt he owned.  Big deal."  He then pointed at pictures of the house and continued:

> Look at that house.  Its middle to upper middle class.  They have nice TVs, electronic toys, the furniture is nice.  [Brazille] was obviously making enough money, whatever she was doing, in order to maintain this lifestyle.

> So, in arrears $1000, you're going to go out and commit a First Degree Rape and First Degree Robbery?  I don't think so.

"crime-related prohibition" is "an order of a court prohibiting conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). To be crime-related, there must be a reasonable relationship between the condition and the defendant's behavior, but "the prohibited conduct need not be identical to the crime of conviction." Nguyen, 191 Wn.2d at 684. Any community custody conditions that interfere with the convict's fundamental rights must be reasonably necessary to accomplish the essential needs of the State and must be sensitively imposed. State v. Warren, 165 Wn.2d 17, 32, 195 P.3d 940 (2008).

The court imposed the following condition on Bluford: "Inform the supervising CCO[3] and sexual deviancy treatment provider of any dating relationship. Disclose sex offender status prior to any sexual contact. Sexual contact in a relationship is prohibited until the treatment provider approves of such."

We recently held that an identical condition was constitutional as long as the condition was crime-related. See State v. Lee, 12 Wn. App. 2d 378, 386, 403, 460 P.3d 701 (2020) (defendant was required to "'[i]nform the supervising [community corrections officer] and sexual deviancy treatment provider of any dating relationship. Disclose sex offender status prior to any sexual contact. Sexual contact in a relationship is prohibited until the treatment provider approves of such'" (alterations in original)).

The requirement imposed on Bluford is plainly crime-related and sensitively imposed. Bluford was convicted of raping a woman a gunpoint. Even though R.U. was not his romantic partner, this condition involves sexual intimacy which directly relates to Bluford's offense. Bluford's requirement to disclose his history of sexual violence to

---

[3] Community Corrections Officer.

future partners, so that they can make an informed decision regarding any sexual relationship with him, is crime related.

E. Felony Firearm Offender

Bluford argues that the court erred by requiring him to register as a felony firearm offender. We disagree.

A person convicted of a felony firearm offense may be required to comply with registration requirements. RCW 9.41.330(1). A "felony firearm offense" includes "any felony offense if the offender was armed with a firearm in the commission of the offense." RCW 9.41.010(10)(e).

The firearm registration statute is regulatory, not punitive. State v. Gregg, 196 Wn.2d 473, 485, 474 P.3d 539 (2020). When the trial court's finding results in a regulatory, rather than punitive result, a jury determination is not required. State v. Felix, 125 Wn. App. 575, 578, 105 P.3d 427 (2005).

Bluford was charged with rape in the first degree, one element of which was "that the defendant used or threatened to use a deadly weapon or what appeared to be a deadly weapon." The jury was instructed that a firearm is a deadly weapon.

During sentencing, the court made a finding that counts 1 and 2 were felony firearm offenses after the State's request.[4] Bluford did not object. Bluford was required to comply with the felony firearm registration requirements.

Bluford's failure to object to the trial court's findings results in Bluford failing to preserve this issue on appeal. "An appellant may not challenge for the first time on

---

[4] The State did not distinguish which offense formed the basis for the firearm registration requirement. Because the rape charge formed the proper basis for Bluford to comply with firearm registration requirements, we do not need to consider whether the robbery charge requires firearm registration.

-10-

appeal the trial court's findings of fact where those findings are a result of assertions made at the sentencing hearing without objection." State v. Reynolds, 80 Wn. App. 851, 860, 912 P.2d 494 (1996).  Regardless, the record supports the trial court's ruling that Bluford was armed with a firearm.[5]  Therefore, the court's requirement of Bluford to register as a felony firearm offender was proper.

F.  Legal Financial Obligations

Bluford argues that the court erred by imposing discretionary LFOs.  The State concedes.  We accept the State's concession.

The trial court found Bluford indigent, and waived all waivable fees, fines, and interest.  The court imposed community custody supervision fees from boilerplate language on the judgment and sentence.  Courts shall not impose discretionary costs on defendants who have been found indigent.  RCW 10.01.160(3); State v. Ramirez, 191 Wn.2d 732, 748, 426 P.3d 714 (2018).  Supervision fees are discretionary legal financial obligations.  State v. Dillon, 12 Wn. App. 2d 133, 152, 456 P.3d 1199 (2020).  We remand to the trial court to strike the community custody supervision fees.

Affirmed.[6]

---

[5] R.U. was taught about firearms, she felt the gun press against her hip, she thought it looked and felt like a real gun, she thought it looked like a smaller version of a .45 caliber pistol, a single round from a .380 semi-automatic handgun was found in Bluford's residence, a .380 is similar to but smaller than a .45, and Bluford had been convicted of prior robberies using a firearm.

[6] In his statement of additional grounds, Bluford contends that the court violated his due process rights and right to a fair trial.  He bases this on an interaction where Woodward held up her hands to demonstrate how long the gun was.  Bluford contends that the court should have given a curative instruction.  Bluford fails to demonstrate prejudice from this interaction.

Mann, C.J.

WE CONCUR:

Brennan, J.

Chun, J.